JENNIFER J. CAPABIANCO (SBN 193371)
jcapabianco@selmanlaw.com
JILLIAN R. HARVEY (SBN 319711)
jharvey@selmanlaw.com
SELMAN BREITMAN LLP
33 New Montgomery, Sixth Floor
San Francisco, CA 94105-4537
Telephone: 415.979.0400
Facsimile: 415.979.2099

Attorneys for Defendant DISH NETWORK LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD NORDEMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>DISH NETWORK LLC,<br><br>  Defendant. | Case No. 3:21-cv-00923-TSH<br><br>DECLARATION OF SHANNON PICCHIONE IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY LITIGAITON PENDING ARBITRATION<br><br>Date:     March 25, 2021<br>Time:     10:00 a.m.<br>Judge:    Thomas S. Hixson<br>Courtroom: G |

**DECLARATION OF SHANNON PICCHIONE**

I, SHANNON PICCHIONE, declare and state as follows:

1. I am employed as the Vice President of Billing & Credit at DISH Network, L.L.C. ("DISH"). I am over the age of 21. I make this Declaration based on personal knowledge, based on information provided to me in company documents, and based on communications with company personnel in the ordinary course of my duties. I would be willing and able to testify thereto if and when called upon to do so.

2. DISH is a satellite television services provider. DISH (formerly operating under EchoStar) has been in business since the 1985, and there are currently almost 12 million subscribers to DISH's satellite television services in the United States.

3. DISH is organized under the laws of the State of Colorado and is headquartered in

1. Englewood, Colorado.

4. Plaintiff, LEONARD NORDEMAN, called DISH to discuss purchase of satellite television services on July 30, 2016, with assistance from a sales representative. Please find attached hereto as Exhibit A a true and correct copy of the transcript of the sales call with personal identifying information redacted.

5. During the sales call, Plaintiff agreed to purchase satellite television services. At that time, the sales representative advised plaintiff, in part, that "the only time you're locked into something is when the installers go out there and you specifically sign the contract." [Exhibit A at 23:20-22] During the call, the sales representative also advised Plaintiff, in part, that if "your account is disconnected, you'll lose the offer, and of course in order to get the offer, you need to agree to a 24 month commitment. You're still bound by this commitment if you move, and if you break the commitment, you'll be charged an early termination fee of $20 for each month remaining in your commitment to the card you used to qualify." [Exhibit A at 23:2-9]

6. As is customary in the satellite and cable television industry, in addition to providing customers with relevant terms and conditions throughout the sales process, DISH requires its equipment installation technicians to ensure that all customers, including Plaintiff, are presented with—and given the opportunity to read and sign—all agreements pertaining to service, equipment, the relationship of the parties, etc. on the day the equipment is installed and services begin.

7. Plaintiff had satellite television services installed and activated through DISH on August 7, 2016.

8. When DISH installs and activates satellite services, it is DISH's standard operating policy for customers to electronically sign the required Services Agreement and Digital Home Advantage Plan Agreement via a tablet provided by the service installation technician. Satellite television services are not provided if the customer does not sign the foregoing agreements. After a customer signs the tablet at the first place that requires a signature, the customer presses a button to duplicate the signature/initials for the remainder of the

1. document areas that require a signature after being given the opportunity to read the subsequent portions. This is standard e-signature procedure throughout the satellite television services industry.

9. A true and correct copy of the DISH Service Agreement that Plaintiff executed is attached hereto Exhibit B. Plaintiff signed the Service Agreement on August 7, 2016.

10. A true and correct copy of the Digital Home Advantage Plan Agreement ("DHAPA") that Plaintiff signed on August 7, 2016, is attached to hereto as Exhibit C.

11. A true and correct copy of the Residential Customer Agreement ("RCA") that Plaintiff agreed to via the Service Agreement and DHAPA that he executed on August 7, 2016, is attached hereto as Exhibit D.

12. The RCA is a standard residential customer service agreement that is publicly available on DISH's website, and it was publicly available on DISH's website when Plaintiff signed up for DISH's services and throughout the duration of his service agreement.

13. DISH sent Plaintiff bills from August 22, 2016 through November 12, 2017. Plaintiff paid his bills monthly through July 24, 2017.

14. Plaintiff has not initiated the informal dispute resolution notice process for the disputes set forth in his November 30, 2020, Complaint.

15. DISH customer service representatives had informal discussions with Plaintiff regarding some of his disputes, but no informal dispute resolution notice process was ever initiated by Plaintiff.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ___10___ day of February 2021, at Englewood, Colorado.

SHANNON PICCHIONE