UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD NORDEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>DISH NETWORK LLC,<br><br>    Defendant. | Case No. 21-cv-00923-TSH<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 4 |

## I.   INTRODUCTION

This breach of contract lawsuit arises out of an agreement between Plaintiff Leonard Nordeman and Defendant Dish Network LLC for residential satellite television services. Pending before the Court is Dish's motion to dismiss or, in the alternative, stay the litigation pending arbitration. ECF No. 4. Nordeman filed an Opposition (ECF No. 7) and Dish filed a Reply (ECF No. 12). The Court finds this matter suitable for disposition without oral argument and **VACATES** the March 25, 2021 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Dish's motion for the following reasons.

## II.   BACKGROUND

On August 7, 2016, Nordeman signed and entered into a written Service Agreement with Dish to provide the cable television services known as "America's Top 200" in exchange for a fixed monthly price of $61.93. Compl. ¶ BC-1, ECF No. 1; Picchione Decl. ¶ 7, ECF No. 4-1; *id.*, Ex. B (Service Agreement), ECF No. 4-3. The monthly price was guaranteed by Dish not to increase over the period of the contract. Compl. ¶ BC-1. The Service Agreement states that "the Residential Customer Agreement ('RCA'), as applicable is incorporated by reference herein and

contains additional terms and conditions." Service Agreement at 1.  The Service Agreement also states that the RCA is available for download at Dish's website. *Id.* In turn, section 12 of the RCA provides that the customer agrees to be bound by informal dispute resolution and mandatory binding arbitration provisions. Picchione Decl., Ex. D at 9, ECF No. 4-5. Specifically, paragraph 12(c) (entitled "Informal Dispute Resolution; Notice and Opportunity to Cure") provides, in relevant part, as follows:

> You and DISH agree to first try to resolve any Dispute informally. Accordingly, neither you nor DISH may start an individual action, either through binding arbitration or in small claims court, for at least sixty (60) calendar days after you or DISH notifies the other of a Dispute by sending a written document titled "*dispute resolution notice*" . . . .

Pursuant to the Service Agreement, any dispute that could not be resolved through informal dispute resolution would be submitted to binding arbitration on an individual, and not class-wide, basis:

> [Y]ou and [Dish] . . . agree that any and all disputes arising out of relating to or concerning this Service Agreement, the Equipment, the Services and/or any other aspect of your relationship with [Dish] will be resolved through mandatory and binding arbitration pursuant to the terms and conditions set forth in the RCA.

Service Agreement at 1.  Section 12 of the RCA provides as follows:

> A. Mandatory and Binding Arbitration. In the event that you or we have a Dispute (as defined below) that cannot be resolved through informal dispute resolution pursuant to Section 12(C), then you and we agree (unless you opt out of Section 12 in accordance with Section 12(H)) to resolve such Dispute . . . through binding arbítration .You and DISH also each agree that this Agreement evidences a transaction in interstate commerce and, thus, that the Federal Arbitration Act (the "FAA") governs the interpretation and enforcement of this provision.
>
> B. Dispute Defined. The term "Disputed" means, subject to the exceptions set forth in Section 12(K), any and all past, present or future disputes, claims or controversies between you and DISH, whether based in contract, statute, regulation, ordinance, tort (including, without limitation, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort) or any other legal or equitable theory, and includes, without limitation, the validity, enforceability and/or scope of Section 12. The term "Dispute" is to be given the broadest possible meaning that will be enforced and includes, without limitation, any and all claims between you and DISH in any way arising out of, relating to or in connection with: (i) this Agreement and your applicable Promotion

> Agreement(s); (ii) DISH's services (including, without limitation, Services); (iii) DISH's devices or products (including, without limitation, Equipment); (iv) billing, collection and credit reporting; (v) telephone calls, texts, faxes and emails that you claim you received from DISH and/or a party acting or purporting to act on DISH's behalf; and/or (vi) DISH's and/or its agents' collection, retention and/or disclosure of personally-identifiable information. For purposes of Section 12 only, "DISH," "we," "us," or "our" means DISH Network L.L.C., DISH Network Corporation and its past and present direct and indirect subsidiaries, and the predecessors, successors and assigns of all of the foregoing persons and entities, and the past or present officers, directors, employees, partners, agents, attorneys, shareholders and legal representatives of all of the foregoing persons and entities.

RCA ¶ 12.

Nordeman also signed the Digital Home Advantage Plan Agreement ("DHAPA"), which includes the following statement:

> By signing below, you acknowledge and agree that you have received, read, understand and agree to be bound by all the terms set forth in this Agreement (including, without limitation, the RCA), and that all such terms and conditions were disclosed to you prior to activation.

Picchione Decl. ¶ 10 & Ex. C (DHAPA) at 1.

In 2017 Dish began adding services to Nordeman's account and billing him for amounts not due under the contract. Compl. ¶ BC-2. When Nordeman discovered the breaches by Dish, he terminated the contract. *Id.* After he exercised his right to cancel the contract, Dish reported Nordeman to various credit agencies, resulting in significant damage to his credit. *Id.* ¶ BC-4. According to the complaint, the parties' contract was a home solicitation contract as defined by California Civil Code section 1689.6, but Nordeman was never provided the mandatory three-day cancellation provision by Dish. *Id.* ¶ BC-2.

On November 30, 2020, Nordeman filed this case in the San Mateo Superior Court of California, alleging two causes of action: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. Dish removed the case to this Court on February 5 and filed the present motion on February 11, 2021. It argues that, pursuant to the terms of the Service Agreement and RCA, any dispute between the parties must first proceed through an informal dispute resolution process. Mot. at 1.

### III. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), courts are required to enforce contractual arbitration agreements except "upon such grounds as exist at law or in equity for the revocation of any contract." *Epic Sys. Corp. v. Lewis*, ___ U.S. ___, 138 S. Ct. 1612, 1616 (2018). The FAA "reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotations omitted). The court's role is to decide: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 1131.

### IV. DISCUSSION

Dish argues Nordeman's claims must be dismissed or stayed because he failed to go through the informal dispute resolution process set forth in the RCA. Mot. at 6. In response, Nordeman argues that no valid agreement to arbitrate exists because he never signed the agreement and therefore did not agree to the arbitration provision. Opp'n at 2. He further argues the contract is an unenforceable "home solicitation" sales contract that was rescinded and is therefore not enforceable. *Id.* at 7.

**A.    Contract Formation**

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In California, "[a] party petitioning the court to compel arbitration bears the burden of proving by a preponderance of evidence the existence of an arbitration agreement." *Olvera v. El Pollo Loco, Inc.*, 173 Cal. App. 4th 447, 453 (2009) (citation omitted), *abrogated on other grounds by AT&T Mobility LLC*, 563 U.S. at 339. Because "arbitration is a matter of contract," the FAA cannot

1   require a party "to submit to arbitration any dispute which he has not agreed so to submit." *United*
2   *Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Under California law,
3   a contract requires (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4)
4   consideration. Cal. Civ. Code § 1550.

5       Nordeman argues the parties did not enter into an agreement because he did not sign the
6   documents Dish submitted in support of its motion and the signatures on the two documents "are
7   anything but identical." Opp'n at 4. "Authentication of a writing means (a) the introduction of
8   evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence
9   claims it is or (b) the establishment of such facts by any other means provided by law." *Ruiz v.*
10  *Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 843 (2014). "The act of the person may be shown
11  in any manner, including a showing of the efficacy of any security procedure applied to determine
12  the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code
13  § 1633.9(a).

14      Here, Dish submitted a declaration from Shannon Picchione, its Vice President of Billing
15  & Credit, which outlines Dish's procedures and process for electronic signatures. Picchione Decl.
16  ¶ 1. Picchione states that Dish requires its equipment installation technicians to ensure that all
17  customers "are presented with–and given the opportunity to read and sign–all agreements
18  pertaining to service, equipment, the relationship of the parties, etc. on the day the equipment is
19  installed and services begin." *Id.* ¶ 6. She further states that when Dish installs and activates
20  services, it is "standard operating policy for customers to electronically sign the required Services
21  Agreement and Digital Home Advantage Plan Agreement via a tablet provided by the service
22  installation technician" and that "services are not provided if the customer does not sign the
23  foregoing agreements." *Id.* ¶ 8. Based on this declaration and the agreements with Nordeman's
24  signatures, the Court finds Dish has met its burden to show the authenticity of Nordeman's
25  signature. *See Gonzalez v. Ceva Logistics U.S., Inc.*, 2016 WL 6427866, at *3-4 (N.D. Cal. Oct.
26  31, 2016) (declaration outlining company's process is sufficient evidence to support the
27  authenticity of customer's signature). The record reflects that Nordeman signed both the Service
28  Agreement and the DHAPA. *See* Service Agreement at 1; DHAPA at 1.

**B.      Home Solicitation Sales Act**

Next, Nordeman argues the contract proffered by Dish is an unenforceable home solicitation sales contract that he rescinded. *Id.* at 7.

The California Home Solicitation Sales Act ("HSSA"), Cal. Civ. Code §§ 1689.5-1689.14, applies to any contract for the sale of goods or services of $25 or more made anywhere other than the seller's appropriate trade premises. "'Appropriate trade premises' means premises at which either the owner or seller normally carries on a business, or where goods are normally offered or exposed for sale in the course of a business carried on at those premises." *Id.* § 1689.5(b). "The focus of the "home solicitation" requirement centers upon the place where the contract was made." *People v. Toomey*, 157 Cal. App. 3d 1, 13 (1984) (citations omitted). While the purpose of the legislation was to "protect consumers against the types of pressures that typically can arise when a salesman appears at a buyer's home," California courts have not limited the home solicitation statute to door-to-door solicitors. *Weatherall Aluminum Prod. Co. v. Scott*, 71 Cal. App. 3d 245, 248 (1977) (fact "that the seller appears at the buyer's home in response to a phone call from a buyer is insufficient to remove a contract from the statute's ambit." ); *Toomey*, 157 Cal. App. 3d at 14 (telephone solicitations fall under the definition of "home solicitations" in section 1689.5(a)); *Louis Luskin & Sons, Inc. v. Samovitz*, 166 Cal. App. 3d 533, 537 (1985) ("Although the home solicitation statute is commonly thought of as protecting consumers from the high pressure sales tactics of door-to-door solicitors, the clear, unambiguous language of the statutes gives it a much broader application").

The HSSA allows a buyer in such a transaction to cancel it within three business days after signing the contract. Cal Civ. Code §§ 1689.5, 1689.7. Further, "[u]ntil the seller has complied with this section the buyer may cancel the home solicitation contract or offer." *Id.* § 1689.7. A violation of the statute precludes any obligation of the buyer to pay for services from the seller prior to cancellation. *Id.* § 1689.11(c).

Here, Dish does not argue that the contract contains the right to rescind provision. Instead, it argues the HSSA does not apply because the parties entered into an oral contract when Nordeman called Dish at its normal trade premises. Reply at 8-9. It provides a transcript of a July

30, 2016 telephone call, claiming Nordeman called Dish to inquire about its services, and that the parties reached an agreement at that time. *Id.* at 9. However, Nordeman disputes this evidence, and the transcript is susceptible to the interpretation that no agreement was reached. Picchione Decl., Ex. A at 23 (Dish representative stating: "you being on the phone with me right now doesn't lock you into anything – the only time you're locked into something is when the installers go out there and you specifically sign the contract . . ."). While such ambiguous evidence may be considered after the parties have an opportunity to conduct discovery, the Court declines to consider it now.

The FAA defers to state contract law in determining the enforceability of arbitration clauses, recognizing as defenses "grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under California law, if a contract is illegal, a party may avoid arbitration. *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 29 (1992) ("If a contract includes an arbitration agreement, and grounds exist to revoke the entire contract, such grounds would also vitiate the arbitration agreement. Thus, if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether.") (citations omitted); *Richey v. AutoNation, Inc.*, 60 Cal. 4th 909, 917 (2015). "Contracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts." *Green v. Mt. Diablo Hosp. Dist.*, 207 Cal. App. 3d 63, 73 (1989) (citing Cal. Civ. Code § 1667(1), (2)). "Any such illegality voids the entire contract." *Id.* (citing *Loving & Evans v. Blick*, 33 Cal. 2d 603, 609 (1949)); *Duffens v. Valenti*, 161 Cal. App. 4th 434, 454 (2008). Further, under California law, contracts are extinguished by rescission. *Duffens*, 161 Cal. App. 4th at 447; *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 973 (1997), *as modified* (July 30, 1997). Arbitration may be refused when "grounds exist for rescission of the agreement." Cal. Civ. Code §1281.2(b).

In *Duffens*, clients of a dating service alleged fraud in the inception and execution of a dating services contract that included arbitration provisions. 161 Cal. App. 4th at 442. The clients also alleged violations of statutes prescribing standards and language that must be included in dating service contracts pursuant to California Civil Code section 1694.3. *Id.* The trial court denied the defendant's motion to compel arbitration, determining that the contracts, including the

7

1  arbitration provisions, were void and unenforceable because the defects in the agreements were
2  central to statutory policy and the express statutory language regarding unenforceability for
3  noncompliance. *Id.* The court of appeal affirmed, holding that "'a statute prohibiting the making
4  of a particular kind of contract except in a certain manner renders such contract void if made in
5  any other way." *Id.* at 455. It noted "that if a statute prescribes the only method in which a valid
6  contract can be made, a contract that fails to follow that method is void. **Omitting required**
7  **provisions, as here, does not follow the requirements of the statute**. *Id.* (emphasis added).

8  In *Weatherall*, the buyer telephoned the seller who then sent a representative to the buyer's
9  home with a sample of an insulated wall system. 71 Cal. App. 3d at 247. The buyer signed a
10 contract at its residence and gave the seller's representative a $100 deposit, leaving a balance due
11 of $1,650. *Id.* The signed written contract did not contain a notice of the buyer's right to cancel
12 as required by California Civil Code section 1689.7 for a home solicitation contract. *Id.* After the
13 seller installed the wall system, the buyer was dissatisfied with the work and refused to pay the
14 balance due. *Id.* The seller then filed a lawsuit against the buyer, after which the buyer mailed a
15 written notice of cancellation to the seller. *Id.* The buyer filed a cross-complaint and thereafter
16 moved for summary judgment on the cross-complaint "on the basis of their having cancelled the
17 contract." *Id.* The trial court granted the buyer's motion for summary judgment, and the court of
18 appeal affirmed, stating:

> If this result appears to deal harshly with merchants who have fully performed under their contracts, it seems clear to this court that the message which the Legislature has attempted to convey by enactment of sections 1689.5 et seq. of the Civil Code is 'Caveat Vendor.' Merchants, put on notice by the statute, can easily and inexpensively protect themselves, however, by including a right to cancel provision and an accompanying notice of cancellation as a matter of course in all contracts signed outside their trade premises.

24 *Id.* at 249.

25 Here, at this stage in the pleadings, it appears possible that the parties' contract is covered
26 by the HSSA. If so, since it contains no right to rescind provision, Nordeman's cancellation of the
27 contract would preclude Dish from enforcing any rights under the contract, including any right to
28 arbitrate disputes. *See Duffens*, 161 Cal. App. 4th at 454 ("[C]ontracts contrary to express statutes

8

or the *policy* of express statutes are illegal.  Such illegality voids the entire contract, including the arbitration clause.") (emphasis in original); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 73 (2018) ("Under general principles of California contract law, a contract is unlawful, and therefore unenforceable, if it is 'contrary to an express provision of law' or contrary to the policy of express law, though not expressly prohibited." (citing Cal. Civ. Code § 1667) (alterations omitted).  Therefore, Dish's motion must be denied.

## V.   CONCLUSION

For the reasons stated above, the Court **DENIES** Dish's motion.

**IT IS SO ORDERED.**

Dated: March 12, 2021

THOMAS S. HIXSON
United States Magistrate Judge